Syllabus.

THE FREIBERG LUMBER COMPANY, a Corporation of the State of
Ohio, *vs.* ROSALIE MAHONEY STEAMSHIP CORPORATION, a
corporation of the State of Delaware.

1.  SHIPPING—EVIDENCE OF FAILURE TO DELIVER CHARTERED VESSEL HELD
    TO PREVENT NONSUIT.

    Evidence that the rate for chartering similar vessels greatly exceeded the
rate specified in the charter, and that the charterer did charter a smaller
vessel at a greater rate than stated in the charter, *held* sufficient to prevent
nonsuit for failure to prove damage by breach of the contract to deliver the
vessel under the terms of the charter, notwithstanding proof that the charterer
had subchartered other vessels controlled by it during the same season.

2.  SHIPPING—WHEN DAMAGES TO VESSEL FROM EXCEPTED PERIL EXCUSES
    DELIVERY BY OWNER STATED.

    Where the chartered vessel was damaged by fire before the time for de-
livery under the charter, which excepted peril from fire, the owner is not
liable for breach of the charter, if the vessel was wholly or partly destroyed,
or if he made a reasonable investigation and ascertained that the cost of re-
pairs would be such that a reasonable man would not make them, in view of
the value of the vessel when repaired.

3.  SHIPPING—OWNER MUST DELIVER DAMAGED VESSEL TO CHARTERER
    WITHIN REASONABLE TIME.

    —Where a chartered vessel was damaged by an excepted peril before time
for delivery under the charter, but not so as to prevent repair, it is the duty
of the owner to repair the vessel and deliver it to the charterer within a reason-
able time, though the time for delivery has already expired.

4.  TRIAL—JURY ARE SOLE JUDGES OF CREDIBILITY OF WITNESSES.

    The jury are the sole judges of the credibility of the witnesses and the
weight and value of their testimony.

5.  EVIDENCE—RULES FOR WEIGHING CONFLICTING EVIDENCE STATED.

    Where the evidence is conflicting, the jury should reconcile it, if they can,
but, if not, should believe that most worthy of belief, and reject that less
worthy of belief, taking into consideration the opportunity of witnesses for
knowing the facts, their apparent fairness, their interest, and any other cir-
cumstances.

                    (*June,* 5 1919)

RICE and HEISEL, J. J., sitting.

*Caleb. S. Layton* (of Marvel, Marvel, Layton and Golds-
borough); *Murray Seasongood* (of the Ohio Bar); and *Hor-
ace L. Cheyney* (of the New York Bar) for plaintiff.

*Andrew C. Gray* (of Ward, Gray and Neary) and *Alfred H.
Stickland* (of the New York Bar), for defendant.

Superior Court for New Castle County, May Term, 1919.

SUMS. CASE, No. 1, March Term, 1918.

Action by the Freiberg Lumber Company against the Rosalie Mahoney Steamship Corporation.    Verdict rendered for plaintiff.

The plaintiff introduced evidence to show that on March 21, 1917, the parties entered into a charter contract, whereby the plaintiff chartered the steamship Rosalie Mahoney, then owned by the defendant, for a term of six calendar months from the delivery of the steamer, but not before June 15, 1917; that if delivery should be made after July 15, 1917, the plaintiff had the right to refuse acceptance on or before the day of delivery; that the steamer was to be employed in United States ports, Mexican and Central American ports, and ports of the Caribbean Sea and West Indian Islands, at $400 a day, and for the purpose of transporting mahogany logs to be used in connection with plaintiff's business of manufacturing mahogany and mahogany veneer, with the right to sublet; that defendant failed to deliver the steamer in accordance with the provisions of the charter, but, in fact, after the steamer had been damaged by fire, on April 18, 1917, sold her, on June 20, 1917, in her damaged condition; that the Rosalie Mahoney could have been repaired for delivery at a reasonable cost, and within a reasonable time, under the terms of the charter; that by reason of the failure of defendant to deliver the steamer, the plaintiff lost the difference between the charter hire and what it would have cost to charter a like steamer during the said term of six calendar months.    The cost of chartering steamers similar to the Rosalie Mahoney during said period was shown, which was greatly in excess of the hire of the Rosalie, and the president of plaintiff company testified that the company chartered, on July 6, 1917, a steamer of only half the capacity of the Rosalie Mahoney, for $425 per day.    He admitted, on cross-examination, that, about May, 1917, finding no available cargoes for the boats then under his company's control, it offered for chartering, or subletting, at least one steamer, and possibly more than one.

[1] When the plaintiff rested, counsel for defendant moved for a nonsuit, on the ground that plaintiff had failed to show any damage; that there was no testimony to show that, from the day the charter was signed, the plaintiff did not have, at all times, other boats chartered which carried all its logs without extra expense to it; that even though, under the charter, the plaintiff had the right to sublet, and might have been able to sublet the steamer at a profit, yet there had not been a suggestion that the plaintiff intended or had tried to sublet the steamer, but, on the contrary, that plaintiff only wanted her for the purpose of the mahogany trade.

In reply it was contended that if, under the evidence, only nominal damages could be recovered, there should not be a nonsuit, and especially so since it had been shown that the plaintiff company, during the period covered by the charter, chartered another boat, of only half the capacity of the Rosalie Mahoney at the sum of $425 per day; that the measure of damages was the difference between the charter price of the Rosalie Mahoney and the market value of the same or a similar steamer during the term for which the charter was to run.

HEISEL, J. We decline to grant the motion for a nonsuit.

The defendant introduced evidence for the purpose of showing that the Rosalie Mahoney was, on April 18, 1917, so damaged by fire that the cost of repairs to her former condition would be so large, and the time required so long, that defendant was relieved of its obligation to deliver the steamer under the charter.

Other facts and contentions of the parties appear in the charge of the court.

HEISEL, J. (charging the jury). This is an action brought by the plaintiff, the Freiberg Lumber Company, a corporation of the state of Ohio, against the defendant, the Rosalie Mahoney Steamship Corporation, a corporation of the state of Delaware, to recover damages for the breach of a contract heretofore entered into by them.

Opinion.

The plaintiff claims that on March 21, 1917, it entered into a contract, sometimes called a charter party, or charter, with the defendant, whereby the plaintiff chartered the steamship Rosalie Mahoney, then owned by the defendant, for a term of six calendar months, time to commence from the delivery of the vessel, but not before June 15, 1917; that delivery under the charter could be made at any time after June 15, 1917, but, if delivery should be made after July 15, 1917, the plaintiff had the right to refuse to accept the vessel on or before the day of delivery; that the charter hire was for $400 a day, and the vessel was to be employed in United States ports, Mexican and Central American ports, and ports of the Caribbean Sea and West Indian Islands. Plaintiff further claims that defendant failed to deliver the vessel in accordance with the provisions of the contract, or charter party, although plaintiff was willing and anxious to accept her, and so notified defendant or its agents; that by reason of such failure of defendant to deliver the vessel the plaintiff lost the difference between the charter price of $400 a day and the cost of chartering a like vessel during the term of six calendar months for which the charter was to run, amounting in the aggregate, approximately, to the sum of $63,000.

Defendant admits the execution of the charter party or contract, but claims that on April 18, 1917, while at Jacksonville, Florida, fire broke out on board the vessel, which so damaged her that the costs of restoring her to her former condition would be so large, and the time in which to restore her would be so long, that defendant was excused from its obligation to deliver her under the charter.

In reply to this excuse on the part of the defendant for not delivering under the charter, plaintiff contends that the Rosalie Mahoney could have been repaired at a reasonable cost and within a reasonable time for delivery under the terms of the charter, and that plaintiff was ready and willing to accept her at such time, and so notified the defendant; but notwithstanding this the de-defenant, on the 20th day of June; 1917, sold the Rosalie Mahoney,

Opinion.

without attempting to repair her, thereby rendering the fulfillment of its contract with the plaintiff impossible.

These, gentlemen, are the contentions of the plaintiff and defendant.

We have been requested by plaintiff and by defendant to give you binding instructions to find respectively for each. This we decline to do, because we think the case is one that should be submitted to you for your determination of the facts, from the evidence, under the law as we shall declare it to be applicable to this case.

As we have already said, the execution of the charter, which bears the date of March 21, 1917, is admitted, and the charter is in evidence. This charter provides, among other things, that the defendant, then the owner of the steamship Rosalie Mahoney, had chartered her to the plaintiff for a term of six calendar months at $400 a day, time not to begin until delivery of the ship; also that plaintiff should have the privilege of subchartering the ship. *Section* 15 of the charter provides:

"That if required by the charterers, time not to commence before June 15, 1917, and should steamship not be ready for delivery on or before July 15, 1917, charterers or their agents to have the option of canceling this charter at any time not later than the day of the steamer's readiness."

Under this section, time was not to commence before June 15, 1917, but delivery could be made any time after that date; but if delivery was made after July 15, 1917, the plaintiff had the option of canceling the charter on or before the day of the delivery.

It is also admitted that fire broke out on the vessel on April 18, 1917, at Jacksonville, and that she was damaged thereby; that she was not repaired by the defendant and was not delivered to the plaintiff, but was sold by the defendant to a Mr. Linderman, on the 20th day of June, 1917, for the consideration mentioned in the bill of sale, which is in evidence.

[2] Clause 17 of the charter provides:

"The act of God, the country's enemies, fire, etc., through this charter party always mutually excepted."

It is under the excepted peril of fire in the foregoing section that defendant claims to be relieved of its obligation under the

charter provision to deliver the vessel. Therefore the first disputed question of fact for your consideration is whether or not the Rosalie Mahoney was sufficiently damaged by fire at Jacksonville on April 18th to excuse the defendant, her then owner, from repairing her and delivering her to the plaintiff under the terms of the charter. Where a vessel under charter has been damaged by fire before the time of the charter begins to run, it is the duty of the owners to repair her as speedily as is reasonably possible after the fire, if she is worth repairing, and the charterers must await her readiness. The mere happening of an excepted peril, such as the act of God, fire, etc., does not of itself terminate the contract, but it is the result of such happening that is the effective cause. If the vessel is totally destroyed, or so damaged as to make her practically worthless, of course the charter is at an end, and owner and charterer are each released from their obligations under the charter. But when the vessel is not completely destroyed, or rendered practically worthless, it then becomes necessary to determine what damage to her, short of that, will excuse the owner from his obligation to repair her and deliver her in accordance with the terms of her charter. The court have been considerably troubled in endeavoring to determine what is the correct rule of law by which the jury should be guided in considering that question. We think, however, it would be a fair rule to require the owner to use due diligence in ascertaining the damage done by the fire, and, if it be determined that the vessel is not a total loss, and that she could be repaired within a reasonable time, considering the terms of her charter, and at such cost as would justify a reasonably prudent shipowner in undertaking it, considering her value after repairs, then it is the duty of the owner to make the repairs and deliver her to the charterer within a reasonable time. And when a shipowner relies upon damage by fire or other excepted peril to excuse him from the consequences of his breach of the charter, for not delivering under the terms of the charter, the burden is upon him to satisfy the jury, by a preponderance or greater weight of the evidence, that he has met the requirements of such rule.

If, therefore, you are satisfied from the preponderance of the evidence that the Rosalie Mahoney was totally destroyed by the fire at Jacksonville, or that her then owner used due diligence in ascertaining the extent of her damage, and found it to be of such character that she could not have been repaired within a reasonable time, considering the terms of her charter, or that the cost of repairs would have been so great, considering her value after being repaired, that a reasonably prudent shipowner would not have undertaken them, the plaintiff cannot recover, and your verdict should be for the defendant.

If, however, you are not satisfied by a preponderance of the evidence that the Rosalie Mahoney was a total loss by reason of the Jacksonville fire, or that her then owner, the defendant, did not use diligence in ascertaining the extent of her damage, or, if having ascertained the extent of her damage, found it to be such that she could have been repaired within a reasonable time, considering the terms of her charter, and at a cost not so great, considering her value after repairs, that a reasonably prudent shipowner would not have undertaken them, and defendant did not repair and deliver her within a reasonable time, under the terms of the charter, then the defendant would be liable and the plaintiff can recover.

[3] It was the duty of the defendant to deliver the vessel after June 15, 1917, and if, by reason of the fire, it became impossible for the defendant to deliver her to the plaintiff before July 15, 1917, it was then the duty of the defendant to deliver within a reasonable time after July 15, 1917, unless you shall find that the vessel was damaged by fire to so great an extent that defendant was excused from its obligation to repair and deliver, as we have defined it. And what would be a reasonable time is for you to determine from all the facts and circumstances of the case.

[4] You are the sole judges of the credibility of the witnesses and the weight and value of their testimony. With that we have nothing to do.

[5] Where the evidence is conflicting, you should reconcile it if you can, but if you cannot reconcile it, you should be-

lieve that which you deem most worthy of belief and reject that which you deem less worthy of belief, taking into consideration the opportunity of the witnesses for knowing the things about which they testify, their apparent fairness, their interest or bias, if any, or any other circumstances that may help you to a fair determination of the matter.

You should find for that party in whose favor is the preponderance or greater weight of the evidence.

If you find for the plaintiff, it should be for such sum as you find from the evidence will reasonably compensate it for the damages actually sustained by reason of the failure of the defendant to deliver the vessel in accordance with the terms of the contract; the measure of damage being the difference, if any, between the charter hire agreed upon in the charter party and the market value of charters of the same kind, for similar vessels, at the time the vessel should have been delivered.

If you find for the defendant, you verdict should be simply for defendant.

Verdict for plaintiff.